## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ROBERT D. COLEMAN, # 298-136 | * | |
| Plaintiff | * | |
| v | * | Civil Action No.  ELH-13-474 |
| COMMISSIONER OF DIVISION OF CORRECTION | * | |
| | * | |
| Defendant | *** | |

### MEMORANDUM

Robert D. Coleman has filed suit against the Commissioner of the Division of Correction ("Commissioner'), pursuant to 42 U.S.C. § 1983.  The Commissioner has filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, with exhibits.  *See* ECF 16. Notice of  defendant's dispositive motion and plaintiff's opportunity to file affidavits and records in reply were sent to Coleman pursuant to the requirements of *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).  *See* ECF 17.  Coleman did not file a reply.

### BACKGROUND

**I.      Plaintiff's Claims**

Coleman is an inmate at the Roxbury Correctional Institution in Hagerstown, Maryland. He complains that he was denied his right to due process in connection with a positive drug test of his urine.  Coleman explains that on January 22, 2013, his urine specimen was tested using a one-step process to identify the drug Suboxone (also known as Buprenorphine).[1]   Coleman's specimen tested positive and he was issued notice of an infraction. He claims, however, that the

---

[1] Suboxone is a prescription medication approved for the treatment of opiate dependence. *See*      http://www.fda.gov/Drugs/DrugSafety/PostmarketDrugSafetyInformationforPatientsand Providers/ucm191523.

sample was "mishandled" and contaminated by the testing officer, because another inmate's urine was tested at the same time.  Additionally, Coleman claims that a second test should have been conducted to confirm the positive finding.  He asserts that the previous testing method used by the Division of Correction ("DOC"), the EMIT II, is more reliable because it employs a two-step process; the second step is a test to verify positive test results.  And, Coleman claims that the hearing officer was biased against inmates.  *See* ECF 1; ECF 16-2, Ex. 1 at 11-12.

On February 1, 2013, Coleman was found guilty of the infraction after a disciplinary hearing.  ECF 16-2, Ex. 1 at 8.  The following sanctions were imposed: 300 days of disciplinary segregation, revocation of 120 good conduct credits,[2] and an indefinite suspension of his visitation privileges.  *Id.* at 10.[3]  Plaintiff alleges that he was denied due process at his disciplinary hearing, because he was "subjected to corporal punishment and personal abuse" and the hearing officer "refused to hear me out."  Complaint, ECF 1 at 2.[4]  He claims that he presented to the hearing officer that his urine sample was mishandled.  Further, he contends the hearing officer did not fairly consider his evidence and is biased against inmates.  As relief, Coleman seeks to overturn his infraction.  He also requests a second urinalysis, restoration of his good conduct credits and visiting privileges, reassignment to the therapeutic program in which he was participating when the urinalysis was conducted, and two-step urine testing.

---

[2] Good conduct credits are deducted "in advance" from the inmate's term of confinement. *See* Md. Code, § 3–704(a) of the Correctional Services Article.

[3] Coleman will be eligible for reinstatement of visitation on August 1, 2014.  ECF 16-2, Ex. 1 at  10.

[4] Coleman provides no details to support his allegations of corporal punishment and personal abuse.  He sets forth no allegations of fact remotely suggesting he was subjected to physical or other abuse or punishment at the disciplinary hearing.

## II. Defendant's Response

The Commissioner's verified and uncontroverted exhibits demonstrate that on January 22, 2013, Correctional Officer II Jose Rodriguez conducted a "spot check" of Coleman's urine. ECF 16-2, Ex. 1 (Notice of Inmate Disciplinary Hearing, at 2). This test was approved for use in DOC facilities in July 2011. ECF 16-3, Ex. 2, DCIB#17-11 (Suboxone testing-clarification). Officer Rodriguez, who is trained to perform the test, dipped the sample card into Coleman's urine for five seconds, placing the card on a flat, clean surface according to test procedures. ECF 16-2, Ex. 1 at 2. He followed "all protocols set forth by the manufacturer" and is certified in the use of the particular test-the DTx Buprenorphine (Suboxone) Single Test Card. *Id.* Coleman's urine tested positive for that illicit substance. *Id.*

Coleman was served with notice of the disciplinary hearing and rule violation. *See id.* at 1. The notice of inmate rule violation indicated that Coleman had been spot checked for urine sampling. *See id.* at 2. It illustrated the conditions under which the sample was collected, listed the results of the urinalysis, and provided an explanation of the rule that had been violated. *See id.* Coleman was advised of his rights and given the opportunity to offer evidence, witnesses, and to obtain representation. *Id.* at 1.

At his disciplinary hearing on February 1, 2013, Coleman conceded this was his seventh "dirty" urine and he had pleaded guilty to the others. But, he contended that Officer Rodriguez contaminated the sample taken on January 22, 2013. ECF 16-2, Ex. 1 at 8. Coleman claimed to have "paperwork for another inmate that he [Officer Rodriguez) did it [tested the sample] at 11:00, so how he gonna test both at the same time and not contaminate one or other, that shit aint right…." *Id.* The Hearing Officer noted that Coleman's defense was that the "urine sample should be tested twice and there is only one test, and he has another Notice for another inmate

that reads the same as his, the testing officer should not test two samples at once, so must [sic] have contaminated the sample, and Sgt. Covington handled his urine sample and is not on the chain of custody form….” *Id*. at 9.

The Hearing Officer was not persuaded by Coleman's presentation. *Id.* She found, *inter alia*, that the test was conducted in a manner consistent with the procedures relevant to the test, and there was "no reliable evidence of contamination." *Id*. Thus, she determined that Coleman was guilty of violating Rule 111, *i.e.,* possession or use of a medication or substance (excluding alcohol) that could be used as an intoxicant. As a result, the Hearing Officer sanctioned Coleman, as noted. *See* ECF 16-2, Ex. 1 at 9-10; Ex.3. On or about February 15, 2013, Warden J. Philip Morgan affirmed the decision and the sanctions. ECF 16-2, Ex. 1 at 13.

## DISCUSSION

### I. Standard of Review

A motion styled as a motion to dismiss under Fed.R.Civ.P. 12(b)(6) or, in the alternative, for summary judgment, implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F.Supp.2d 431, 436–37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," but "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed.R.Civ.P. 12(d).

When the movant expressly captions his motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.,* 149 F.3d 253, 261 (4th Cir. 1998).[5]

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5 C Wright & Miller, Federal Practice & Procedure § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id*. at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id*. at 165–67.

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. de Nemours and Co. v. Kolon Industries, Inc*., 637 F.3d 435, 448 (4th Cir. 2011). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans*

---

[5] In contrast, a court may not convert a motion to dismiss to one for summary judgment sua sponte, unless it gives notice to the parties that it will do so. *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp*., 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials.").

*v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). Generally, to raise adequately the issue that discovery is needed, the party opposing the motion must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244–45 (discussing affidavit requirement of former Rule 56(f)).

As earlier noted, Coleman was informed of his right to file a response to the Motion and the opportunity to submit affidavits, declarations, and other documentary evidence. *See* ECF 17. He did not respond. I am satisfied that it is appropriate to address defendant's motion as one for summary judgment, because this will facilitate disposition of the case.

Summary judgment is governed by Fed.R.Civ.P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving party must demonstrate that there are disputes of material fact so as to preclude the award of summary judgment as a matter of law. *Matsushita Elec. Indus. Co. v. Zenith, Radio Corp.,* 475 U.S. 574, 586 (1986). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id*. at 248. There is a genuine issue as to material

fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings, but rather must" set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting former Fed.R.Civ.P. 56(e)), cert. denied, 541 U.S. 1042 (2004). However, the court must "view the evidence in the light most favorable to .... the nonmovant, and draw all inferences in [his] favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002).

Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89 94 (2007). Nevertheless, the court must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir.1993), and citing *Celotex Corp.*, 477 U.S. at 323–24).

## II. Supervisory Liability

The complaint raises no allegation of personal involvement by the Commissioner. Vicarious liability based on respondeat superior is generally inapplicable to § 1983 actions. *See Love–Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983); *Vinnedge v. Gibbs*, 550 F.2d 926, 927–99 (4th Cir. 1977); *see also Monell v. Department of Social Services of City of N.Y.*, 436 U.S. 658, 691 (1978). Liability of supervisory officials is not based on ordinary principles of respondeat superior, but rather is premised on "a recognition

that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (citing *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)).

To establish a claim for supervisory liability under § 1983, the claim must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). Coleman's conclusory statements concerning defendant's administrative responsibilities are insufficient to suggest personal involvement, so as to confer culpability, and defendant is entitled to summary judgment on this basis. Further, even if this matter were to proceed, defendant is entitled to summary judgment in his favor, for the reasons that follow.

### III. Due Process Claim

Inmates retain rights under the Due Process Clause, but prison disciplinary proceedings are not part of a criminal prosecution and the full array of rights due a defendant in these proceedings does not apply. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (citing *Morrissey v. Brewer*, 408 U.S. 471, 488 (1972)). Although prisoners "may not be deprived of life, liberty or property without due process of law," their due process rights remain "subject to restrictions imposed by nature of the regime to which they have been lawfully committed." *Wolff*, 418 U.S. at 556. Accordingly, "there must be mutual accommodation between

institutional needs and objectives and the provisions of the Constitution that are of general application." *Id*.

In prison disciplinary proceedings where an inmate faces the possible loss of good conduct credits, certain due process protections attach. These include: (1) advance written notice of the charges against him; (2) a hearing where the inmate is afforded the right to call witnesses and present evidence, so long as doing so is not "unduly hazardous to institutional safety or correctional goals"; (3) the opportunity to have non-attorney representation when the inmate is illiterate or the disciplinary hearing involves complex issues; and (4) an impartial decision-maker and a written statement of the evidence relied on and the reasons for taking any disciplinary action. *Id*. at 564–571. There is no constitutional right to confront and cross-examine witnesses, nor a right to counsel. *Id.* at 567-70; *see Baxter v. Palmigiano*, 425 U.S. 308, 322 (1976); *Brown v. Braxton*, 373 F.3d 501, 505–06 (4th Cir. 2004). If the hearing officer's decision contains a written statement of the evidence relied upon, procedural due process is satisfied. *See Baxter*, 425 U.S. at 323 n.5.

In the prison context, a liberty interest is created by the imposition of an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Substantive due process is satisfied so long as the disciplinary hearing decision is based upon "some evidence." *Superintendent, Mass. Correctional Institution v. Hill*, 472 U.S. 445, 455 (1985). A disciplinary hearing officer's findings of fact will be disturbed only when unsupported by any evidence, or when wholly arbitrary and capricious. *Id*. at 456; *see also Baker v. Lyles*, 904 F.2d 925, 933 (4th Cir. 1990). As long as there is some evidence in the record to support a disciplinary committee's factual findings, a federal court will not review their accuracy.

The undisputed exhibits show Coleman was provided advance written notice of the charges, an opportunity to call witnesses, present evidence, and have representation. After the hearing, Coleman was provided with a written statement of the evidence relied on by the Hearing officer in rendering her decision. In sum, Coleman was sanctioned based on evidence showing his urine tested positive for Suboxone after the proper testing protocol was followed. Coleman provides no evidence, apart from his self-serving allegations, to suggest bias by the decision-maker. Assuming, as Coleman contends, that the hearing examiner stated "'we' do not use the Emit II anymore and the Commissioner approved the one-step test and I am convicting on it." (Complaint, ECF 1 at 3), this statement falls far short of suggesting prejudice or bias against Coleman. This was by Coleman's own account his seventh "dirty" urine test, and the sanctions he received were commensurate with penological objectives to eliminate illegal drug use in the institution. Coleman alleges no facts demonstrating an atypical and significant hardship in relation to ordinary prison life.

In sum, there was sufficient evidence upon which to find Coleman guilty of the infraction, and no evidence that the disciplinary hearing was arbitrary or capricious. The due process claim lacks merit. For these reasons, even when the facts are viewed in the light most favorable to Coleman, no genuine issue of material fact is presented and defendant is entitled to summary judgment as a matter of law.[6] For the foregoing reasons, and by way of a separate Order, summary judgment will be entered in favor of defendant.

June 4, 2014  
Date

/s/  
Ellen Lipton Hollander  
United States District Judge

---

[6] Having determined that defendant is entitled to summary judgment in his favor on these grounds, I need not reach defendant's qualified immunity defense.